Good morning, Your Honor. Andrea St. Julian on behalf of the appellant Salvador Delrio. The first thing that Mr. Delrio would ask this court for is a vacatur of his conviction. And that is because the district court erred in deciding that he had not made a sufficient offer of proof to support his defense of necessity. I think where the district court went wrong was in looking at the level of proof that was necessary to allow Mr. Delrio to proceed to trial with a defense of necessity. Mr. Delrio only had to make a prima facie case. You know, it was not the province of the district court to decide the even to think about whether they were weak or strong arguments. It was just, he was only required to make a prima facie showing which is what he did. Certainly, he was faced with two evils, either deliver two suitcases or risk someone being killed. He certainly acted to prevent the harm of having someone being killed. And then also, it was very reasonable of him to believe that if he did not deliver these suitcases, someone would be killed. And I think the reasonableness is borne out by the fact that when the delivery of those two suitcases was thwarted because of Mr. Delrio's arrest, two people were, in fact, killed. So I think under those circumstances, it's very clear that Mr. Delrio's belief was quite reasonable. So what was the evidence that Mr. Delrio reasonably thought that his friend of a friend, a courier, would be harmed or killed if he didn't follow through? Yeah. Well, the evidence is Mr. Delrio's own statements, especially when you look in light of that this is just a prima facie showing. And it's for the trial court, it's for the jury to decide whether to believe Mr. Delrio or not. That more than meets prima facie evidence. Additionally, the fact that two individuals were, in fact, killed. Is there any objective evidence for his belief in that? Or is it more of a subjective belief that if he didn't follow through, something bad would have happened to this other person? No, I would say that that's definitely objective. That is objective. That is what he was told. And all of the circumstances surrounding that show that. And again, it's not for the court to decide whether they think this is credible. That's for the jury to decide. This is just whether there's prima facie evidence of that. And that was definitely presented. And then finally, whether there were any legal alternatives to violating the law. And again, no, there were not any other legal alternatives. If Mr. Delrio had said no, someone would probably have been killed, which is, in fact, what happened. Did Delrio say that he contacted authorities? No. Was that an alternative? No, and that was not an alternative because, in fact, in a sense, the authorities were contacted because they had set up this deal. And once it became known that individuals were killed, if Mr. Delrio had gone to the authorities, people would have been killed. So there were no legal alternatives. And again, this is for the jury to decide whether those were appropriate legal alternatives or not. But factually, there is no question but that if Mr. Delrio had gone to the police, then people would have still been killed. So factually, that's true. And so with that, he's met the four elements and on a prima facie level so that the jury can decide whether there are, how they feel about credibility issues. Again, that's for the jury to decide. Okay. And if this court has no other questions on that particular issue, I'd like to move on to the sentencing issues. Of course, Mr. Delrio would first like to see his conviction vacated. Even if this court does vacate it, we would still like the court to address the minor role issue just in the event that there is sentencing later on so that the court can understand we're wrong in denying Mr. Delrio his minor role adjustment. So going on to that issue of the minor role request, the court made a myriad, myriad errors in denying Mr. Delrio's minor role request. And I think that they can all be summarized really in just a few sentences. In 2015, the sentencing guidelines were amended by Amendment 794. And basically, it just clarified what courts should do. What the district court did in this case is it acted as if Amendment 794 never existed. It engaged in an analysis and relied on an interpretation that existed before 2015. And for that reason, it made one mistake after another. The first mistake that it made is it denied the minor role request on the basis that Mr. Delrio was an indispensable part of the transaction of the scheme. That is completely erroneous after the Amendment of 794, yet that is specifically what the district court ruled on in deciding that it was going to deny Mr. Delrio a minor role adjustment. The court specifically said, without the defendant, there is no distribution. Bottom line. The next mistake that the district court made, and another classic mistake after the 794 amendment, was that the district court failed to compare Mr. Delrio to all likely defendants in this particular drug scheme. And specifically, the court was required to compare Mr. Delrio's hand. The court did anything else but that. The court again relied more on what it called the indispensable nature of Mr. Delrio's conduct. It said that Mr. Delrio carried a gun, that Mr. Delrio was trusted. Again, none of these have anything to do with the requirements of how to determine a minor role adjustment. The court at no point discussed any of the higher level or lower level participants in the criminal activity at hand. The people who ran the structure of the criminal activity, who had planned the drug transaction, who had grown or cultivated or none of those things were discussed because the court didn't take any of those into consideration. The next thing that the court did wrong was its repeated reliance on comparing Mr. Delrio to an average participant. Again, this is a classic mistake that has been pointed out as being error in cases subsequent to Amendment 794, like Quintero Leyva case and the Diaz case. The court kept saying, instead of talking about all likely participants, kept talking in terms of an average participant. The court said things such as, while the defendant was not involved in the negotiation of the drugs, that does not make him substantially less culpable than the average participant. Classic mistake. Classic mistake. Finally, not finally, but penultimately, the court did not discuss all of the factors that are listed in the relevant guidelines commentary. There are five that the commentary says that the court must look at. The court did not discuss and did not really look at any of those three. First of all, the court never took into consideration the degree to which Mr. Delrio understood the scope and structure of the criminal activity. He had zero understanding of the scope and structure of the criminal activity. Mr. Delrio was approached less than 24 hours before the transaction and said, if you don't deliver these drugs for me, someone is going to die. And all he did was meet someone here in the United States, picked up two suitcases and brought them to Torrance. That was it. He knew nothing else. The next is the degree to which he participated in planning or organizing the criminal activity. He had no participation in planning or organizing. All he did was call and say, call the people that he was delivering and say, this is where, where am I supposed to bring these two? We have case law that says that a judge doesn't need to tick off all the factors here. The judge did cite the relevant sentencing guideline provisions. He said that he read the briefs and, you know, we were supposed to presume that judges know the law and this judge has been on the bench for a while and I'm sure he's done, you know, dozens if not hundreds of these. So, you know, even if he didn't make explicit findings, I mean, I can presumably presume he knew what he was doing and he implicitly refers to a lot of these factors, even if he doesn't cite explicitly the relevant provisions in the sentencing guideline. Yeah. I think the problem was probably that this court had been on the bench a very long time. That's why he was using the factors that were pre-2015 and while he was going through the analysis as pre-2015. And the presumption does not hold when you read the court's decision and it is pointedly contrary to the requirements. What this court did is textbook Quintero, Leyva, and Diaz. Textbook. It is textbook, all of those things that 794 was meant to address. You cannot use a presumption to ignore what the court in fact did. And the court in fact did everything wrong as pointed out in the cases of Quintero, Leyva, and Diaz. It did every single one. We can't ignore that and pretend like the court did not do that. The court was thinking pre-2015. It totally forgot about the amendment of 794. And to finish up on the last point, if you look at the sentencing guidelines and look at the list of likely participants, a courier is almost dead last. The only individual that's lesser is a mule. You know, if you, Mr. Del Rio was the quintessential courier. He knew nothing about what was going on and he didn't even know it for any length of time. It was less than 24 hours. He got two suitcases and took them someplace. That was the sum total of what he did. That is quintessential courier. And again, just as pointed out in the listing of in terms of minimal roles, a courier is a quintessential minimal role player. So with the 43 seconds that I have left, I would just also like to point out that the court made its decision on sentencing based on inaccurate information. Mr. Del Rio had no information as to what was in those suitcases. He guessed, but he didn't know. And that was specifically shown in the tape recording made by the government of the transaction. The government kept trying to get him to say that he knew what was in there and he kept saying, I don't know what's in here. I don't know what's in here. So if we ruled in New York, how would it affect? He would get a minimal role and so that would lower the guideline range. So basically, you know, if the court doesn't have an appropriate guideline range, it can't make an appropriate sentence. I'm sorry, Your Honor. You cut out. I can't hear you. Lower the guideline range. Why? Your Honor, I am sorry. Off the top of my head, I do not recall what the difference in the guideline range would be with the minimal role adjustment. Yeah, well, I'm going to give you your time's up, but I'll give you two minutes for rebuttal. Maybe you could find the answer. Thank you, Your Honor. I will. Corwin's question in that period. Thank you. So, Mr. Reedy, we'll proceed with the Pele's position. Mr. Reedy, you're on mute. Thank you, Your Honor. Good morning, Your Honors. And may it please the court, defense counsel's point about the necessity, the judge's ruling that the defendant had not provided a prime and fashion case of necessity. That ruling was not based on any credibility finding or any assessment of the weakness or strength of that case. The government's position challenging that the offering of the defendant and the judge's ruling adopting that defendant, in fact, accepted every word of the defendant's affidavit as true, and based on that, found that there was no prime and fashion case made. First, even if we accepted every word the defendant said was true, he was not presented with a choice between evils. Even if you look very closely at his affidavit, which I believe is found on the record of ER 208 to 209, Rudy Hernandez never told the defendant that his friend would be spared if the defendant delivered the drugs. Instead, Rudy simply approached the defendant and said that my original choice to participate in the deal proved unacceptable to my supplier. Can you please help me out? And because of the way that Rudy Hernandez approached the defendant, the defendant could not reasonably anticipate that his actions alone would save the life of Rudy Hernandez's friend. This court has been very clear that before the defendant is allowed to present the jury that he had no choice but to take the law into his own hands, there needs to be a direct causal relationship between the defendant's illegal action and the harm sought to be avoided. Defendant never showed that his involvement in the drug deal would somehow alleviate the suspicion that his supplier had towards Rudy Hernandez's friend. And without that direct causal link, there really can't be the prime and fashion case in this fall short. And if you look closely at the defendant's declaration, I think all he can say is that he thought he could possibly save the life of Rudy's friend or that Rudy's friend may be harmed or killed. And that sort of attenuated link between the defendant's illegal actions and the harm sought to be avoided is simply not enough to form a prime and fashion case. Also, Your Honor, there was no imminent harm. As the defendant said, he believed that Rudy Hernandez's friend may be harmed or killed. There's nothing similar to the Contento Bachon case in which the defendant in that case was presented with a situation where the supplier said, you either help me or I will kill your wife and child. There was nothing similar to that level of threat in this case. Also, Your Honor, there was no showing of a lack of legal alternatives. As I believe Judge Gould pointed out, the defendant never said that he had approached the police and found them to be uncooperative, whether he had experience with the Mexican authorities in the past, which proved to him that approaching them, telling them that Rudy Hernandez had approached him about participating in a drug deal and that Rudy Hernandez's friend was in trouble, why that would not have alleviated the harm that he claims to have participated in a drug deal and to be paid $6,400 in order to avoid. And with respect to the district court's sentencing decision, and in particular, the denial of the minor rule adjustment, there's simply no evidence in the record that the district court relied on a five-year-old version of the guidelines in denying the defendant's request. Rather, the sentencing transcript makes clear that the court identified the proper guideline and the proper note in that guideline that he was required to follow. And in his application of that to this case was not an abuse of discretion. As Judge Lee pointed out, the district court is he's not required to tick off all the factors that would apply in the minor role analysis, or rather that presumption. Yes, sir. He said that there was no distribution. But that's the defendant is what we call in the Eastern District anyway, a domestic mule to distinguish from someone who was transporting drugs from outside the country into the United States. The domestic mule is essential. In fact, that's the crime. She's the domestic mule is actually committing the crime of importation. And yet, we give them four points off from minimal role in the offense. And this is where the government's, you know, acquiescence. I think the recognition is, is that they're, they're, they're more is more based to the extent that I understand that on their, on their moral culpability, the people who are the most involved and the most culpable and the most significant are the people who pay the domestic mule to do the delivery. And the people to whom the drugs are delivered, in turn, distribute the drugs. And it seems to me that to simply say that he couldn't have the crime could not have been committed without him is is is is wrong. As a basis to deny a minor mind you're minimal. I'm not talking about a minimal role, but a minor role, which you would get two points off. So that's the, that's my first question. I have a couple of others about what he did say. Certainly your honor. And I think that if, if the district court had relied socially, solely on the essential nature of the defendant's role, I think that that would have been error. However, if you look at the sentencing transcript, that really is not what he did. The district courts relied, performed a fact-specific comparative analysis of the defendant's role compared to that. That comparison was the only one that defendant asked him to make. He compared the defendant's role to that of the supplier, the person who actually noted who negotiated the price of the drugs with the buyer. And I think the district court, to his credit, cited that fact in his analysis, in his minor role analysis. And I think he noted that as a note in his favor. However, he still found that the defendant's role was greater than that of a typical courier. And I think that the facts bear that out. The defendant's job was not simply to transport drugs from point A to point B. The defendant also was, was charged. And I should also point out, he was charged with the responsibility for a significant amount of drugs. I believe their estimate was a quarter million dollars worth of drugs. And the defendant. Can't hear Judge Corman. The amount of the drugs actually affects the guideline range. In fact, the guideline range is generally keyed to the amount of the drugs. So you have, you start off with a fairly high guideline range, largely because of the amount of the drugs. I don't see how that goes to his, whether he gets a minimum role. And don't forget, it's not a minimal role, but a minor role as compared to other people involved in this transaction. Yes, sir. I think that the amount of drugs that the defendant had with him does, and the fact that he knew that he had 64 packages worth of drugs, I don't think that the record supports that it was a guess. And if it was a guess, it was a pretty tremendously accurate guess. The fact that he was entrusted. I didn't say it was a guess. I'm just suggesting the amount of the drugs is what drives the guidelines. If he had a tenth of it, the guidelines would be significantly lower. So I think that I'm not sure that the amount of the drugs should necessarily go to whether his role in the offense was minor or not. Your Honor, I think that it does because one of the factors that the guidelines list is the acts performed and responsibilities of the defendant. And in this case, he was entrusted with a significant amount of responsibility because he was told to deliver 64 packages worth of drugs, which I think even the defendant recognized was a significant amount of drugs. That's true in all legal cases. They're trusted, in effect, to make the delivery. And again, we deal mainly in our district with the mules who are importing. They are entrusted with these drugs. And in fact, the government is permitted to offer evidence as to the amount of the drugs to show that they were aware that they were carrying drugs. So again, I'm troubled by what the district court said in denying this a minor role. Your Honor, I suppose if you're talking about a mule, I'm not sure if you're referring to someone who is unaware exactly of what they are carrying. And I think that the comparison I would make is the Diaz case, in which the defendant was completely unaware of the amount or what type of substance he was carrying and merely charged with delivering the drugs across the border, where I believe that they were going to be taken from someone else to meet with the buyer. In this case, we do not just have, respectfully, it is not just a courier. The defendant was charged with security of the drugs. He stayed with the drugs for an extended period of time. And then he acted as the seller's representative with the buyer and was entrusted with safe delivery of 64 packages of drugs for which he was paid on a commission basis, $100 per package for the safe delivery of the drugs. And I think we can infer from the fact that the company... I'm sorry, Your Honor? I'm asking you, when was he paid? He was going to be paid upon the successful delivery of the drugs. However, the intervention of law enforcement prevented that from happening. I can't hear Judge Corman. I'm sorry. Unless he talks into the mic. You know, we didn't have any problems yesterday. And that was because the laptop was closer to me and they didn't have a wire to make the laptop closer today. So I'll try and speak up. The fact that they didn't give him the money in advance and that they only paid him after the delivery was successful suggests a lack of degree of trust. They wanted to be sure that he would make the delivery before they paid him for it. I suppose, Your Honor, I'm not sure if it indicates a lack of trust in the defendant. I think that it possibly could have reflected a lack of trust in the confidential informant, which, you know, is another person who would be participating in the deal and would be in a position to call upon law enforcement in order to cut the deal short, which is in fact what happened in this case. Your Honor, I do just want to... I want to ask you one... I apologize, Your Honor. I did not catch that question. The judge also, in defying the minor role of the defendant, took into account that he was carrying a weapon. Isn't that accounted for by his plea to gun-carrying counts? So that would... that carry a mandatory... which carry certain mandatory minimums. And so I'm just asking whether that was appropriate in determining whether he should have gotten a minor role adjustment or not. Your Honor, I think the court, in trying to assess the level of the defendant's decision-making authority and his responsibility, I think that the fact that he himself felt the need to arm himself in order to safeguard the drugs is indicative of those two factors, which are part of the minor role analysis. I think that the fact that the defendant felt he needed to obtain a loaded weapon for himself showed that he knew exactly how valuable the drugs that he was carrying and therefore the risk that he had of potentially being robbed, either at the deal or before. It also showed that he had the discretion to decide what security measures were appropriate to safeguard the drugs and also to execute those decisions. And that is exactly what he did in this case. So I understand the judge's point about the fact that the dangerousness involved in carrying the firearm during the drug deal. That was included in the overall sentence, but I think also it's relevant to the district court's minor role analysis. And I think the court was right to consider that as part of that analysis. I have a question I'm going to ask you. I'm looking at the pre-sentence report that says the guideline for 185 to 235 months. Is that a correct statement? The guideline without the mandatory 60 months consecutive, that's correct, Your Honor. 188 to 235. Yes, Your Honor, that's correct. The question that I asked your adversary is, suppose we ruled in her favor on this issue, how would it affect the sentence of 240 months, which I believe the judge imposed? Your Honor, I believe that the application of the minor role adjustment lowers the base offense level in a case like this, whereas I don't think it would be at the top level of 38. I'm not sure exactly how far it would come down, but I believe it would come down considerably. And then I believe that the defendant would receive, if he receives a minor role adjustment, he would receive an additional two levels off of that already lowered guideline range because of that. I don't, but I'm not sure exactly how that shakes out as far as, and I apologize, you're asking a lawyer to do math, and there's a reason I went to law school. I'm sorry, Your Honor, I don't have the exact number. I'm just trying to figure out, given the mandatory sentence that he faces on the rough calculation, one point on the guideline range is equal to about 10 percent of the sentence. But I, so that would, but I'd sort of like to know the answer. Yes, Your Honor, and I, we can submit something to the court after the argument's concluded. The government would be happy to provide a revised guideline calculation if the minor role adjustment was applied. Okay, thanks, Mr. Reedy. Thank you, Your Honor. We will, therefore, go to Ms. St. Julian and giving you another two minutes, but because of our remaining calendar, we do have to ask you to try to please stay within that. I will definitely do that, Your Honor. Thank you. Unfortunately, Your Honors, I was not able to find what the new guideline range would be. I think it is, I think that's because all the parties believe that what is important is to have an accurate guideline calculation for the, district court to be able to appropriately impose a sentence, and so just the fact that it changes is important, and we at the time, I think, didn't really think that how it changed was going to be that important. So I apologize for not having that information for the court, but just like the government said, we can submit something, and that's fine. One of the things, I'll focus on the mitigating role. First of all, the government argued that carrying a gun showed that Mr. Del Rio was trying to safeguard the drugs. That's pure speculation, and there's nothing in the record to support that. Mr. Del Rio could have been carrying a gun to protect himself, because he was going into a situation where he had no idea who these individuals were, or how dangerous they may have been to himself. So I don't think that we can say that he was trying to safeguard the drugs. He did not have really hardly any skin in this game. He didn't know anything about this. He was just transporting these drugs from point A to point B, and he was going to be paid afterwards. He was not going to get a percentage of what these drugs were worth. He was, in fact, the classic courier, and should have gotten a minimum role adjustment. And with seven seconds left, I will conclude there, Your Honors. Thank you, Ms. St. Julie. Unless Judge Gorman or Judge Lee have additional questions, this case shall be submitted. Before we go, I want to just thank both Ms. St. Julie and Mr. Reedy for their excellent arguments, and you both presented your cases in the finest conditions of the bar, and we appreciate it. We couldn't get our job done without advocates, so thank you. Thank you, Your Honor. That case shall be submitted, and we'll go on to the battle case on our docket.
judges: Gould, Korman, Lee